UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEVEN ROBERTS,
                     Plaintiff,

                                                                    06 CV 5966 (GEL)

     -against-

                                                                    (ECF CASE)
                                                                    COMPLAINT
                                                                    and DEMAND FOR
                                                                    JURY TRIAL

AIG GLOBAL INVESTMENT CORP.,
AMERICAN INTERNATIONAL GROUP, INC.,
and JUDY LOMBARDO,

                     Defendants.
------------------------------------------------------------X

       Plaintiff Steven Roberts ("Plaintiff" or "Roberts"), by his attorneys, Beranbaum Menken Ben-Asher & Bierman LLP, for his complaint against Defendants states as follows:

## NATURE OF ACTION

1.      This action is brought to remedy violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq,* the anti-disability discrimination provisions of the New York City Human Rights Law, New York City Administrative Code §8-101 *et. seq.,* the disclosure requirements of the Employee Retirement Income Security Act (ERISA), and for conversion.

2.      Plaintiff seeks injunctive and declaratory relief, economic, compensatory, liquidated and punitive damages, counsel fees, and other appropriate relief.

## JURISDICTION AND VENUE

3.      Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C. § 2617. The court has supplemental jurisdiction over Plaintiff's state law and New York City law claims pursuant to 28 U.S.C. §1367.

4. As the unlawful employment practices complained of herein occurred within, and Defendants regularly do business within, the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. §1391(b).

## PARTIES

5. The Plaintiff is a citizen of the United States and resides in the county of New York, State of New York, and at all times referred to herein was an "eligible employee" of Defendants pursuant to 29 U.S.C. § 2611(2)(A).

6. AIG Global Investment Corp. ("AIGGIC") is a corporation organized under the laws of New Jersey, with a principal place of business in New York, New York. It is an "employer" within the meaning of the FMLA and within the meaning of the New York City Human Rights Law in that it employed 50 or more employees on a full-time basis at all relevant times herein.

7. American International Group, Inc. is a corporation organized under the laws of Delaware, with a principal place of business in New York, New York. It is an "employer" within the meaning of the FMLA and the New York City Human Rights Law in that it employed 50 or more employees on a full-time basis at all relevant times herein.

8. Defendant Judy Lombardo is the Administrator of the AIG Defendant's short-term disability employee welfare plan.

## FACTUAL ALLEGATIONS

9. Plaintiff was employed by Defendants (collectively, "AIG") from August of 2002 until August 5, 2004.

10. Plaintiff began work as Assistant Director of the Treasury Department. At the time of his hire, Plaintiff's working group was a part of Defendant American International Group, Inc.

11.     On or about January 1, 2004, Plaintiff's working group was transferred to Defendant AIGGIC under the Treasurer, Steven J. Bensinger.

12.     At all relevant times herein, Plaintiff was a joint employee of both AIG Defendants.

13.     Within the first few months of his employment at AIG, Mr. Roberts developed multiple sleep disorders. This disorder required extensive and repeated medical treatment, which was only partially successful.

14.     Mr. Roberts also suffered from a depressive disorder and a back problem.

15.     Mr. Roberts' sleep disorders, depressive disorder, and back problem affected his major life activities.

16.     Mr. Roberts' sleep disorders, depressive disorder, and back problem lso constituted a "serious health condition" within the meaning of 29 U.S.C. § 2611(11).

17.     Mr. Roberts' medical conditions impaired his ability to arrive at work at 9:00 AM. Because of this, Mr. Roberts informed the Assistant Treasurer to whom he reported, Robert Gender, of his medical condition and asked for permission to come in late on Wednesdays, and to make up the lost work time at other times in the week.

18.     Mr. Gender granted this request, and also allowed Mr. Roberts to arrive at 10:00 AM on other days of the week when his disabilities required it.

19.     With this reasonable accommodation of his disabilities, Mr. Roberts worked until December of 2003 without serious incident, although he continued to be plagued by his sleep disorders and depression.

20.     In January of 2004, after the Plaintiff's group was transferred to Defendant AIGGIC, Mr. Gender was no longer Mr. Roberts' supervisor. With the transfer, Mr. Roberts reported to Don

McHugh and Mark Gross.

21.     After the restructuring and change in supervision, AIG refused to accommodate Mr. Roberts' disabilities any longer and rescinded the flexible work schedule that had accommodated Mr. Roberts' disabilities, even though the essential functions of his job had not changed.

22.     Mr. Gross informed Mr. Roberts that it would not be acceptable for Mr. Roberts to start his work day later, as he had done previously, because it would "be a bad role model for the others" in the group.  Plaintiff had numerous subsequent conversations with Mr. Gross where he asked for a reasonable accommodation of his medical conditions.  Mr. Gross always refused to grant Mr. Roberts any accommodation.

23.     Mr. Roberts' request to arrive late on certain days was a request for intermittent FMLA leave.

24.     AIG's refusal to grant Mr. Roberts intermittent FMLA leave was without legal or factual justification.

25.     Mr. Gross did not justify his refusal to allow Mr. Roberts a flexible work schedule on grounds that his job requirements made it necessary to arrive at a particular time, indeed, the job requirements did not make such an arrival time necessary.

26.     With the transfer to AIGGIC, Mr. Roberts' start time was moved from 9:00 AM to 8:00 AM, so that Defendants' application of a rigid start time had an even greater adverse impact on Mr. Roberts.

27.     AIG's rescinding of Mr. Roberts' reasonable accommodation caused Mr. Roberts' work performance to suffer.  Unable to consistently arrive at work at 8:00 AM because of his medical condition, Mr. Roberts was admonished by his supervisors for his arrival times.

28.     On July 20, 2004, in an effort to remedy a deteriorating situation and regain the reasonable

accommodation once freely given him because of his health condition, Mr. Roberts submitted to AIGGIC's Human Resources Department ("HR") documentation from his physician of his health problems and their effect on his working life.

29.	AIG responded to Mr. Roberts' submission of medical reports supporting his need for a reasonable accommodation by calling a meeting with him on July 22, 2004.

30.	At the July 22, 2004 meeting, Mr. Gross and Sara Perez of HR, far from granting Mr. Roberts a reasonable accommodation, made him choose between going on short term disability or being placed on probation.

31.	Mr. Gross and Ms. Perez, knowing that Mr. Roberts' medical condition prevented him from consistently arriving to work at 8:00 AM, nonetheless made a condition of his probation arrival at work each day at 8:00 AM. Gross and Perez told Mr. Roberts that if he could not meet this condition, he would be fired.

32.	Mr. Gross and Ms. Perez also told Mr. Roberts that they believed he was fabricating his symptoms, notwithstanding the medical documentation he had submitted.

33.	Since Mr. Roberts was aware that he could not meet the conditions of the probation without the previously-granted reasonable accommodation, he had no choice but to agree to take the offered leave of absence.

34.	After Mr. Roberts told Mr. Gross and Ms. Perez that he would take the leave of absence, they informed him that he had until August 5, 2004 to submit to the completed forms for his short term disability leave. They also told Mr. Roberts that he could take no time off, or start his leave, until he had submitted the completed application, which required, among other things, a signature from his doctor.

35. On Monday, August 2, 2004, Mr. Roberts submitted to AIG the required documents for his disability leave, a "Notice and Proof of Claim for Disability Benefits," filled out by his doctor, and a completed "Request for Leave of Absence," requesting leave pursuant to the FMLA.

36. Mr. Roberts submitted the "Notice and Proof of Claim" forms to a Ms. Green in AIG Human Resources, and the "Request for Leave of Absence" form to the aforesaid Ms. Perez.

37. Wanting Mr. Roberts to finish some assignments and prepare the group for his departure, AIG set his disability leave to start about two weeks after he submitted his request for leave.

38 On August 5, 2004, AIG terminated Mr. Roberts' employment for coming in late and for taking a sick day allegedly without notice, after his August 2 written request for FMLA leave.

39. By firing Mr. Roberts before he took leave, AIG interfered with his right to FMLA leave.

40. Mr. Roberts never received any short term disability benefits.

41. Because of Mr. Roberts' numerous conversations with AIG's managers and HR employees regarding his need for a reasonable accommodation, AIG was obligated to engage in an interactive process with Mr. Roberts to determine the reasonable accommodation appropriate for him.

42. By rescinding Mr. Roberts' prior reasonable accommodation, and by denying his repeated requests for a reasonable accommodation, AIG violated its duty to engage in an interactive process with him.

43. AIG discriminated against Mr. Roberts because of his disability by denying his request for a reasonable accommodation.

44. AIG discriminated against Mr. Roberts because of his disability by firing him because of alleged misconduct  - non-compliance with attendance requirements - that AIG knew was attributable to his medical condition, and which was caused by their unjustified rescinding of his

reasonable accommodation.

45.     Plaintiff could have fully discharged his job duties had AIG continued the minor modification of his work schedule that he had enjoyed prior to December of 2003.

46.     Plaintiff, during the course of his employment at AIG, was a participant or beneficiary of AIG's short term disability employee benefit plan.

47.     The aforesaid employee benefit plan was an "employee welfare plan" within the meaning of ERISA.

48.     On or about February 13, 2005, Plaintiff mailed a request to Judy Lombardo, the Administrator of AIG's short term disability plan, for information that she was required to furnish to Plaintiff pursuant to Title I of ERISA.

49.     Lombardo never complied with Plaintiff's request for Title I information.

50.     At the time of his termination, AIG was in possession of the personal property Plaintiff had in his office.

51.     AIG has refused to return that property to Plaintiff, despite his requests for same.

## FIRST CAUSE OF ACTION: FAMILY AND MEDICAL LEAVE ACT

52.     Plaintiff repeats and reasserts the allegations stated above as if fully set forth herein.

53.     Defendants, by having Plaintiff continue working it was clear he required FMLA leave, by denying him intermittent FMLA leave, and by terminating Plaintiff following his FMLA leave request, interfered with his rights under the FMLA, 29 U.S.C. § 26 01 *et seq.*.

54.     By reason of this violation, Plaintiff suffered damages of loss of income, including loss of income as the result of his termination, and is entitled to reinstatement, backpay, frontpay, interest, liquidated damages, and counsel fees.

## SECOND CAUSE OF ACTION: NEW YORK CITY HUMAN RIGHTS LAW

55.     Plaintiff repeats and reasserts the allegations stated above as if fully set forth herein.

56.     Defendants discriminated against Plaintiff in the terms and conditions of his employment based on disability by refusing to grant him a reasonable accommodation of his disability.

57.     Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of Defendants' actions.

58.      In taking the above described discriminatory actions, Defendants acted with malice and reckless indifference to plaintiff's rights under the Administrative Code

59.     By reason of this violation, Plaintiff suffered damages of loss of income, including loss of income as the result of her termination, and is entitled to reinstatement, backpay, frontpay, interest, liquidated damages, and counsel fees.

## THIRD CAUSE OF ACTION: ERISA

60.     Plaintiff repeats and reasserts the allegations stated above as if fully set forth herein.

61.     Plaintiff filed a request for plan information to Defendant Lombardo, the Administrator of AIG's short term disability plan, that was ignored.

62.     Defendant Lombardo is therefore personally liable to Roberts for the civil penalties provided for by § 502(c)(1) of ERISA, along with counsel fees.

## FOURTH CAUSE OF ACTION: CONVERSION

63.     Plaintiff repeats and reasserts the allegations stated above as if fully set forth herein.

64.     Defendant AIG's retention of Plaintiff's property was not authorized by plaintiff.

65.     Defendant AIG's retention of Plaintiff's property constituted an unauthorized assumption and exercise of right over that property, to the exclusion of plaintiff's rights to that property.

66.     Accordingly, defendant is liable to plaintiff for conversion of Plaintiff's property.

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

a)     declaring the acts and practices complained of herein to be violations of the Family and Medical Leave Act, the New York City Human Rights Law, and the Employee Retirement Income Security Act;

b) enjoining and permanently restraining these violations;

c) directing Defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated;

d)  directing Defendants to place Plaintiff in the position he would have occupied but for Defendants' discriminatory conduct, FMLA and ERISA violations, and unlawful conversion, and making him whole for all earnings and other benefits he would have received but for Defendants' discriminatory, retaliatory and unlawful conduct, including but not limited to wages, overtime, and other lost benefits;

e) directing Defendants to pay Plaintiff liquidated and punitive damages and interest thereon;

f)  awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

g) directing Defendants to pay the Plaintiff compensatory and liquidated damages; and

g) granting Plaintiff such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

DATED:     New York, New York
           August 4, 2006

       Respectfully submitted,

       BERANBAUM MENKEN BEN-ASHER & BIERMAN LLP

          ___/s/_____
          Jason J. Rozger, Esq.
          (JJR 8986)
          80 Pine Street, 32nd Floor
          New York, NY  10005
          (212) 509-1616