UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
STEVEN ROBERTS,                                             :
                                                            :
                    Plaintiff,                              :
                                                            :      06 Civ. 5966 (GEL)
     -v.-                                                   :
                                                            :      **OPINION AND ORDER**
AIG GLOBAL INVESTMENT CORP.,                                :
AMERICAN INTERNATIONAL GROUP, INC.,                         :
and JUDY LOMBARDO,                                          :
                                                            :
                    Defendants.                             :
                                                            :
------------------------------------------------------------x

Jason J. Rozger, Beranbaum Menken Ben-Asher &
Bierman LLP, New York, NY, for plaintiff.

Edward Cerasia II (Adam S. Wexler, of Counsel),
Morgan, Lewis & Bockius LLP, New York, NY,
for defendants.

GERARD E. LYNCH, District Judge:

      Plaintiff Steven Roberts, a former joint employee of the American International Group Inc. ("AIG Inc.") and AIG Global Investment Corp. ("AIGGIC") (collectively "AIG"), brings this action against his former employer and AIG employee Judy Lombardo ("the Defendants").[1] Roberts alleges that AIG interfered with the exercise of his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., failed to provide him with a reasonable accommodation of his disability in violation of the New York City Human Rights Law ("CHRL"), N.Y.C. Admin. Code § 8-101, et seq., and converted his personal property. (Compl.

---

[1] The Court adopts the parties' practice of referring to the employer as "AIG," except where differentiation between AIG Inc. and AIGGIC is necessary for factual clarity.

¶¶ 52, 56, 65-66.)[2] Roberts also alleges that defendant Lombardo is personally liable for failing to provide him with information regarding AIG's short-term disability ("STD") benefit plan, in violation of the Employment Retirement Income Security Act ("ERISA"). (Id. ¶ 62.) Defendants move for summary judgment on all claims; plaintiff cross-moves for partial summary judgment with respect to liability on the FMLA claim. Defendants' motion will be granted in part and denied in part; plaintiff's motion will be denied.

## BACKGROUND

Roberts began working for AIG Inc., AIGGIC's parent company, in August 2002 as a relatively high-salaried supervisor of analysts assessing short-term money market investments. Roberts's performance was generally satisfactory, except that he received low ratings with respect to "Dependability," due largely to attendance and punctuality problems, which led to a backlog of work. (D. 56.1 Stmt. ¶¶ 9-12.)[3] In late 2003, as part of a larger restructuring, AIG Inc. transferred Roberts and another analyst to AIGGIC, where Roberts reported to Mark Gross, the Director of Investment High Grade Research.

---

[2] To the extent that plaintiff ever asserted a claim that his termination constituted discrimination on account of disability (see Compl. ¶ 44, but cf. Pl. Mem. 1-2), he has abandoned it. See Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

[3] All references to defendant's 56.1 statement are to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, dated November 9, 2007. Roberts submitted a Rule 56.1 Statement with respect to his cross-motion for summary judgment on his FMLA claim. With respect to his non-FMLA claims, Roberts filed a response to defendants' Rule 56.1 Statement. Where Roberts does not dispute the substance of defendants' Rule 56.1 Statement, the Court will cite to defendants' Rule 56.1 Statement.

It is undisputed that Gross was persistently dissatisfied with Roberts's performance because of what Gross perceived as Roberts's substandard work product, abrasive relations with co-workers and managers, and chronic attendance and punctuality problems.[4] As early as February or March 2004, Gross consulted AIG's Human Resources Department ("HR") regarding his concerns with Roberts's performance. (D. 56.1 Stmt. ¶ 29.) Although Gross testified that he would have fired Roberts at approximately that time if he had been permitted to, HR executive Sarah Perez directed Gross instead to provide Roberts with feedback on his alleged deficiencies and to document any continued dereliction. (Id. ¶¶ 29-30, 32.)

Over the next several months, Gross kept notes regarding Roberts's alleged deficiencies (Gross Dep. 89-90), and met with Roberts on various occasions to discuss his concerns with Roberts and to set goals for improvement (D. 56.1 Stmt. ¶¶ 33, 35). At some point during this process, Roberts requested a workplace accommodation (Roberts Dep. 313-14), and during one of the meetings in March, Roberts referred vaguely to some ongoing "health issues" (Gross Dep. 21) as a reason for some of the concerns that Gross had raised. Gross referred Roberts to HR with respect to those issues, and Roberts subsequently met with HR, although it is not clear whether he did so because of Gross's recommendation.[5] Roberts admits that during his meeting with HR he did not get into any "specifics" about his health issues (Roberts Dep. 148-50), and that he was given forms – which he did not fill out – for the purpose of seeking a workplace

---

[4] The record is replete with evidence, most of it acknowledged by Roberts, that Roberts had difficulties with a number of his colleagues.

[5] It is undisputed that Roberts did not elaborate on the severity or duration of his "health issues" to Gross or to any of his other supervisors prior to his termination. (D. 56.1 Stmt. ¶ 34; Gross Dep. 50-51; Roberts Dep. 142-45, 177.) Roberts did, however, tell Gross about a back problem, for which Roberts requested – and received – a suitable chair. (D. 56.1 Stmt. ¶ 71.)

accommodation (id. 293-95.).[6]

By July 2004, Gross decided that Roberts's performance, including his punctuality and attendance, had not improved, and that he should be fired. (D. 56.1 Stmt. ¶¶ 42-45.) Accordingly, Gross consulted with HR and, on July 22, issued Roberts a written warning demanding that Roberts show "dramatic and consistent improvement" in performance within ten days, or face possible termination. The warning was presented during a meeting at which Gross and Perez were present. During that meeting, Roberts stated that without an accommodation, he "would have to take a leave – family medical leave because of a short-term disability." (Roberts Dep. 171; see also id. 196, 211.) Perez left the room to retrieve a "Request for Leave of Absence" form and a "Notice and Proof of Claim for Disability Benefits." (D. 56.1 Stmt. ¶ 47.) Perez handed the forms to Roberts. (Id.) According to Roberts, Gross and Perez stated that due to the press of work, Roberts needed to be at work, that he could not take sick leave in the next ten days, and that he could not start his leave until he had filled out the appropriate paperwork, for which they set a deadline of August 5. (Roberts Dep. 174.)[7]

---

[6] It is undisputed that Roberts never submitted the accommodation forms to AIG. (D. 56.1 Stmt. ¶ 63.) In late July, however, Roberts attempted to hand HR a handwritten note from one of his doctors, which was refused by HR. (Roberts Dep. 269-74.) The note is dated "6/27/04" and states that Roberts suffers from sleep apnea and lower back problems. (Roberts Dep. Ex. L.) The note did not ask for or specify any needed accommodation, but stated that sleep apnea "can exert remarkably deleterious effects on quality of life, productivity and general well being" and that Roberts's back problem "present[s] formidable obstacles to daily function." The note concludes by stating, "Both of these disorders are now being treated, and it is expected that with proper care his improvement in both areas will allow restoration to his optimal level of well being and function." (Id.)

[7] Roberts testified that at this meeting he was "presented with two choices," one of which was to dramatically improve his performance and the other was to take a medical leave. (Roberts Dep. 171-73, 268-69.) While the testimony of Roberts, Gross and Perez differ about the particulars, and not all of the testimony is clear, a reasonable factfinder could find at a

On August 2, 2004, Roberts submitted his "Notice and Proof of Claim for Disability Benefits" form to HR. (D. 56.1 Stmt. ¶ 48.) This form also sufficed as notice of a request for leave under the FMLA. (Perez Dep. 25-27; Pl. 56.1 Stmt. ¶ 17; but cf. D. Suppl. 56.1 Stmt. ¶ 17.) His claim for disability benefits was supported by a doctor's note and indicated that he "became [sic] disabled on 8/12/04." (Roberts Dep. Ex. R.) Roberts testified that he selected that date because he intended to complete a number of projects on which he had been working, and that he recalled that according to his employee handbook he needed to give two weeks' notice before taking a leave. (Roberts Dep. 340-41.)[8] The following day, Roberts submitted his "Request for Leave of Absence" form, which also indicated a planned leave date of 8/12/04. (D. 56.1 Stmt. ¶ 52; Roberts Dep. Ex. F.)[9] After Roberts missed work on August 3, 2004, and reported late on August 5, Gross consulted with HR and senior management at AIGGIC and terminated Roberts's employment for unsatisfactory performance.[10] At the time, although the testimony is not entirely clear, neither Gross nor Perez specifically considered Roberts's request for protected leave in deciding to terminate Roberts. (Perez Dep. 39; Gross Dep. 159.) After the

---

minimum that Roberts indicated his intention to seek a leave, that both Gross and Perez understood that he wished to take a medical leave, and that Perez gave him the necessary forms to file and gave him until August 5 to file the papers.

[8] Roberts's physician, Dr. Deakins, initially identified 8/11/04 as the date that Roberts was to be disabled. Roberts later changed that date to 8/12/04. (Roberts Dep. 364-66.)

[9] Roberts testified that he handed the "Request for Leave of Absence" form to Sarah Perez and on reviewing it, she stated, "Okay, so I'll put you on the schedule. You're scheduled to go out on leave on the 12th . . . it looks fine." (Roberts Dep. 387.)

[10] The termination form completed in connection with Roberts's termination identified "unsatisfactory performance" as the basis for the decision. (D. 56.1 Stmt. ¶ 56.) Roberts acknowledges the form's statement but disputes that he was fired for unsatisfactory performance, citing Perez's deposition in which she states that Roberts was fired because of attendance problems. (Pl. Suppl. 56.1 Stmt. ¶ 56.)

meeting informing Roberts that he was terminated, Roberts asked, and was allowed, to retrieve at least some of his personal belongings. (Roberts Dep. 498, 513; but see id. 480-84.)

**DISCUSSION**

I.  Summary Judgment Standard

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute concerning a material fact is genuine if evidence is such that a reasonable jury could return a verdict for the nonmoving party. Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id. The non-movant cannot, however, escape summary judgment "merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

II.  FMLA Claim

Roberts alleges that AIG interfered with the exercise of his rights under the FMLA. "The FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions

6

of the position of such employee.'" Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 174 (2d Cir. 2006), quoting 29 U.S.C. § 2612(a)(1)(D)). In addition, "[t]he FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." Id., quoting Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721 (2003).

To state a claim for interference with FMLA rights, Roberts must demonstrate that: (1) he was an eligible employee under the FMLA; (2) AIG is an employer under the FMLA; (3) Roberts was entitled to leave under the FMLA; (4) Roberts gave notice to AIG of his intention to take leave; and (5) Roberts was denied benefits to which he was entitled under the FMLA. Brown v. Pension Bds., 488 F. Supp. 2d 395, 408 (S.D.N.Y. 2007), citing Garraway v. Solomon R. Guggenheim Found., 415 F. Supp. 2d 377, 382 (S.D.N.Y. 2006). There is no dispute that AIG is a covered employer and that Roberts was an eligible employee.[11] Nor does AIG dispute that Roberts had a "serious health condition" within the meaning of the statute or that he notified AIG of his intention to take leave.[12] Indeed, the record duly reflects that Roberts completed the

---

[11] The FMLA entitles qualifying employees, see 29 U.S.C. § 2611, to take unpaid leave for up to 12 weeks each year provided they have worked for the covered employer for 12 months. 29 U.S.C. § 2612(a). Roberts meets those requirements.

[12] AIG does not contest the validity of Roberts's notice on the basis that he provided notice for a leave beginning August 12. Nor does Roberts's notice appear to be deficient on that basis. An employee may inform his employer of his need for leave so as to reasonably accommodate the needs of the employer, 29 U.S.C. § 2612(e)(2)(A). See Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir. 2001) ("[t]he right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future."); Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir.1995) ("The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.").

7

form approved by AIG for taking protected leave, Roberts's physician also completed the approved form, and that Roberts submitted – and AIG received – these forms several days prior to his termination.[13] AIG's argument is that Roberts failed to present evidence that would permit a reasonable factfinder to find the remaining element of his interference claim: that he was denied benefits to which he was entitled. AIG makes two arguments in this regard. First, AIG asserts that Roberts cannot show that he was denied a benefit because the evidence demonstrates that Roberts was unable to return to work within 12 weeks of his anticipated leave start date. Second, AIG asserts that even if Roberts could have returned to work after 12 weeks, it would have fired Roberts anyway because of his poor performance. Neither argument withstands scrutiny or entitles AIG to summary judgment.

For the proposition that a plaintiff cannot prevail on an interference claim if he is unable to return to work at the conclusion of the statutorily-protected 12-week period, AIG relies primarily on Sarno v. Doublas Ellman-Gibbons & Ives, Inc., 183 F.3d 155, 161-62 (2d Cir. 1999). Sarno is not on all fours with this case. First, in Sarno – as in the other cases on which AIG relies – the employee's request for FMLA leave was *granted*. Accordingly, the issue in Sarno was whether, at the conclusion of the 12-week period, Sarno was entitled to *return* to a job that there was no factual dispute he remained unable to perform. Under those circumstances, the court made the unremarkable finding that,

---

[13] After the employee provides the notice to the employer of the need for protected leave, "the onus shifts to the employer to inquire further if it needs further information to ascertain whether the leave is FMLA-qualifying." Brown, 488 F. Supp. 2d at 409. AIG had a right under the FMLA to request additional information, see 29 U.S.C. § 2613(c), but it is undisputed that AIG did not inquire any further.

8

> [t]he fact that Sarno was not restored to his position at the end of
> that 12-week period did not infringe his FMLA rights because it is
> also undisputed that at the end of that period he remained unable to
> perform the essential functions of his [former] position. Thus,
> under 29 C.F.R. §§ 825.216(d) and § 825.214(b), respectively, the
> FMLA did not entitle Sarno to be restored to his former position or
> to any other position.

Id. at 161.[14] By contrast, Roberts provided his employer with notice of his intent to take protective leave and was *prevented* from taking that leave because he was terminated shortly thereafter. AIG's attempt to wedge the Sarno line of cases into Roberts's circumstances is not persuasive because the entitlements in question – restoration to a position after taking leave, and the opportunity to take a leave at all – are completely different and are covered by different provisions of the FMLA. Compare 29 U.S.C. § 2614(a) with 29 U.S.C. § 2612(a).

AIG's argument also lacks merit because it confuses the determination of damages with the establishment of liability. If Roberts was unable to return to work after the statutorily-protected period of 12 weeks, that fact may be relevant to the amount of his damages.[15] It would not, however, have any bearing on whether Roberts was denied benefits to which he was entitled under the FMLA. Liability for denial of a benefit accrues at the time the benefit is denied. See

---

[14] 29 C.F.R. § 825.214(b) is especially transparent in this regard. The regulation states,

> [i]f the employee is unable to perform an essential function of the
> position because of a physical or mental condition, including the
> continuation of a serious health condition, the employee has no
> right to restoration to another position under the FMLA.

[15] Roberts alleges that he is entitled to damages in the amount of lost income and lost short-term disability ("STD") benefits, as well as reinstatement, backpay, frontpay, interest, liquidated damages and counsel fees. The sum of Roberts's damages, however, may be minimal given that FMLA leave is limited to 12 unpaid weeks and that there are triable issues of fact with respect to whether and to what extent Roberts would have received STD benefits had his FMLA leave been granted. In any event, the amount of Roberts's damages is for the jury to resolve.

Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 981, n.7 (8th Cir. 2005). Whether AIG improperly denied Roberts protected leave when he applied for it in August cannot be determined by whether he eventually proved unable to return to work in November – something that the parties could not have known, and Roberts did not anticipate (Roberts Dep. Ex. R), when he submitted his leave request.

AIG's second argument – that it intended to fire Roberts anyway because of poor performance – is equally unavailing because there are triable issues as to whether AIG terminated Roberts for reasons related to his substantive entitlements under the FMLA.[16] To the extent that some or all of Roberts's performance problems were the result of his several health problems,[17] and AIG does not dispute that Roberts gave notice of his intention to take leave because of those health problems nor that Roberts was fired before he could take the protected leave to which he was requested and was otherwise entitled, a reasonable trier of fact could find that Roberts was terminated because of performance problems that resulted from the very

---

[16] To the extent that AIG argues that it is entitled to summary judgment because at the time of Roberts's termination the relevant decision-makers did not personally recollect that Roberts had filed a protected leave request (D. 56.1 Stmt. ¶ 58), the argument fails both because it raises a question of credibility, and because a decision-maker's good faith or lack of knowledge that its conduct violates FMLA does not protect it from liability. See, e.g., Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1130 (9th Cir. 2001); Potenza v. City of New York, 365 F.3d 165 (2d Cir. 2004) (per curiam) (stopping short of establishing the precise parameters of an interference claim in this circuit, but citing with approval King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999), in which the court found that intent was irrelevant to the establishment of an interference claim).

[17] Throughout his employment at AIG Inc. and AIGGIC, Roberts suffered from depression, sleep apnea, and a back problem. Roberts's psychological and physical problems interfered with his ability to sleep, leading to fatigue and undermining his performance.

medical condition that entitled him to FMLA leave.[18] Such a finding is especially plausible where Roberts was terminated in close proximity to his having both missed work and arrived late – events which a reasonable jury could find were both manifestations of Roberts's health problems and relevant to AIG's adverse appraisal of Roberts's performance. AIG's argument to the contrary devolves into an argument that it is nonetheless entitled to summary judgment because it effectively beat Roberts to the buzzer by firing Roberts while he attempted to wrap up various projects before going out on leave. Crediting such an argument is contrary to both the letter and the spirit of the FMLA.

Accordingly, AIG's motion for summary judgment with respect to Roberts's FMLA claim is denied. Roberts's cross-motion for partial summary judgment with respect to liability on his FMLA claim, however, is also denied. A reasonable jury *could* conclude that the poor performance that led to Roberts's termination was caused by a medical condition that entitled him to FMLA leave, but whether that is so is a factual question for jury resolution.

Roberts's alternative theory of interference – that AIG interfered with his protected leave by asking him to complete work before going out on leave – also raises triable issues that fall short of entitling Roberts to summary judgment. While "discouraging an employee from using [FMLA] leave" gives rise to a claim for interference, 29 C.F.R. § 825.220(b); Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004), the record is not conclusive that Roberts was so

---

[18] Defendants miss the mark by citing case law that involves *retaliation* claims for the proposition that because Gross contemplated Roberts's termination prior to Roberts's notice of protected leave, Roberts cannot establish as a matter of law an *interference* claim under the FMLA. With respect to an interference claim, so long as a reasonable trier of fact determines that Roberts was terminated because of poor performance that was, in fact, caused by his medical condition, Roberts may prevail on his claim that he was denied an entitlement under the FMLA.

11

discouraged. According to Roberts, Gross and Perez stated at the July 22 meeting that due to the press of work, Roberts needed to be at work and that he could not start his leave until he had filled out the appropriate paperwork. (Roberts Dep. 174, 176, 196-97.) Roberts also testified, however, that he did not ask if he could go on leave before he filled out the paperwork (Id. 197), and there is no direct testimony as to exactly what Gross and Perez told Roberts about when he could begin his leave. Indeed, Perez testified that she did not know how Roberts arrived at the August 12 date (Perez Dep. 111) and there are some indications that Roberts, himself, chose that date (Roberts Dep. 340-41, but see Pl. Supp. 56.1 Stmt ¶ 73). Accordingly, a reasonable trier of fact could conclude that AIG discouraged Roberts from taking leave, but again, it would not – on this record – be required to so find.[19]

Both AIG's motion for summary judgment with respect to Roberts's FMLA claim, and Roberts's cross-motion for partial summary judgment are, therefore, denied.

III. CHRL Claim

Roberts also claims that AIG failed to provide him with a reasonable accommodation of his disability in violation of the New York City Human Rights Law ("CHRL"), N.Y.C. Admin. Code § 8-101, et seq.. Although he concedes that no one at AIG was aware of the specifics of his disability beyond the fact that he generally had "health issues," Roberts argues that AIG is

---

[19] Roberts's final argument – that his termination "interfered" with his FMLA rights even if his termination was for cause entirely unrelated to his entitlements under the FMLA – is without merit. The FMLA "is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." Sista, 445 F.3d at 175 (internal quotation marks and citation omitted); see also Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007) (an employee "will not prevail on his interference claim if [the employer] can establish that it terminated [the employee] for a reason unrelated to his intention to exercise his rights under the FMLA.").

nevertheless liable because "AIG didn't know [about his disability] because they didn't want to know." (Pl. Mem. 19.) This is a colorable allegation, and one on which Roberts has raised – albeit barely – triable issues.

Under the CHRL, an employer "shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a). In order to set out a prima facie case of failure to accommodate, the employee bears the burden of demonstrating that: (1) he was an "individual who has a disability" within the meaning of the statute; (2) the employer had notice of his disability; (3) he could perform the essential functions of the job with reasonable accommodation; and (4) the employer refused to make such accommodation. Parker v. Columbia Pictures Indus., 204 F.3d 326, 338 (2d Cir. 2000).[20]

"[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006) (internal quotation marks omitted).[21] However, "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious – which is to say, if the employer knew or reasonably should have known that the employee was disabled."

---

[20] The Second Circuit established this test with respect to a suit under the federal Americans with Disabilities Act. The same standard applies to the NYSHRL and the NYCHRL, Romanello v. Shiseido Cosmetics Am. Ltd., No. 00 Civ. 7201, 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002), with the exception that the definition of "disability" is broader under state law. See id. at *7 n.2.

[21] New York courts apply the same analysis under the New York City Human Rights Law as federal courts apply under the ADA. Cf. Forrest v. Jewish Guild for the Blind, 786 N.Y.S.2d 382, 396-97 (2004).

Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008); see also N.Y.C. Admin. Code § 8-107(15)(a). Roberts does not claim that his disability was "obvious." Rather, he argues that AIG failed to engage in the required "'interactive process' [where employers and employees] work together to assess whether an employee's disability can be reasonably accommodated." Jackan v. N.Y. State Dep't of Labor, 205 F.3d 562, 566 (2d Cir. 2000). The "interactive process," however, is concerned with the "reasonableness" of a proposed accommodation – it presupposes that an employer is on notice of the employee's disability. See id. Accordingly, Roberts must first establish that he provided notice, or that AIG should have known, of his disability.

On that issue, the parties disagree, and the record is not entirely clear, about exactly what Roberts said to Gross beyond vague allusions to medical problems. There is evidence that Gross was instructed by HR not to probe Roberts for further information (Gross Dep. 50, 53-54), and that Roberts perceived that Gross "didn't want to know" more details (Roberts Dep. 177). In late July, Roberts also attempted to hand HR a doctor's note that documented his disability. (Roberts Dep. 269-74; Roberts Dep. Ex. L.) Whether at this point, or just prior to Roberts's termination at the meeting on July 22, AIG should have known that Roberts was disabled, and whether Gross's repeated denials of Roberts's request frustrated Roberts's pursuit of the "interactive process" contemplated by the statute, are issues for trial. This Court is not prepared to say that because Roberts received – but did not fill out – forms for the purpose of requesting a workplace accommodation (D. 56.1 Stmt. ¶ 63), AIG is entitled to summary judgment as a matter of law. AIG's citation to Nugent v. St. Luke's Hosp. Ctr., 2007 WL 1149979 (S.D.N.Y. Apr. 18, 2007), for that proposition is misplaced. Nugent involved a breakdown in the "interactive process" of

14

establishing a reasonable accommodation. Id. at *19-21. The issue here, however, is whether AIG should have known that Roberts was disabled. Given the disputed issues of fact on this question, the record is sufficient, at this stage, to survive summary judgment.

AIG's remaining argument – that it is nevertheless entitled to summary judgment because Roberts's requested accommodation for "flexibility" was unreasonable – is not wholly without merit, but AIG Inc. had accommodated Roberts, to some extent, in the past by permitting him to arrive at work late (Roberts Dep. 65, 70-75), and there are triable issues as to exactly what accommodation Roberts was requesting at AIGGIC. For example, Roberts testified that he asked Gross for permission "to come in at least several hours late one or two days a week." Although Roberts also stated that "the issue was flexibility" (Roberts Dep. 313-14), it is not clear, as AIG asserts (D. Mem. 11), citing Aquinas v. Federal Express Corp., 940 F. Supp. 73, 78-79 (S.D.N.Y. 1996), that Roberts's "request for flexibility, in reality was a request for freedom to absent [him]self from work," and thus unreasonable as a matter of law. Gross testified that he denied those requests, without specifying the precise accommodation at issue. (Gross Dep. 61-62.)

Accordingly, even though Roberts never told Gross about the precise nature of his medical difficulties (id. 158-60, 184), taking the evidence in the light most favorable to Roberts, as is required in connection with defendant's motion for summary judgment, a reasonable jury could conclude that Roberts requested, and was denied, some form of accommodation for a disability as that term is understood by the CHRL before his termination on August 5. AIG's motion for summary judgment must therefore be denied.

IV.     ERISA Claim

Roberts next asserts that AIG employee Judy Lombardo is personally liable for failing to provide him with plan information pursuant to § 502(c)(1) of ERISA. See 29 U.S.C. § 1132(c)(1)(B) (authorizing discretionary financial penalties of up to $100 a day against plan administrators who fail to provide mandated information within thirty days after a participant's or beneficiary's request). Roberts claims that the STD Program[22] is an ERISA entity and that Lombardo is the "administrator" of that entity. Whether an ERISA plan exists, however, "is 'a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." Tambash v. St. Bonaventure Univ., No. 99 Civ. 967, 2004 WL 2191566, at *4 n.3 (W.D.N.Y. Sept. 24, 2004), quoting Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir.1990).

Here, Lombardo is entitled to summary judgment because Roberts has not met his burden under Local Rule 56.1(d) to support his contention "by citation to evidence which would be admissible." In fact, Roberts offers no evidence – admissible or otherwise – that Lombardo is an "administrator" as that term is understood by 29 U.S.C. § 1132(c)(1)(B) and § 1102(16),[23] or that AIG's STD Program is, in fact, an "employee welfare benefit plan" as that term is defined

---

[22] The STD Program is applicable to AIG and AIGGIC employees. It provides employees with paid leave for a maximum of 26 weeks and runs concurrently with any leave, including leave under the FMLA, to which the employee is entitled. (D. 56.1 Stmt. ¶ 60.)

[23] An "administrator" under ERISA is "the person specifically so designated by the terms of the instrument under which the plan is operated," the plan sponsor, or "such other person as the Secretary [of Labor] may by regulation prescribe." 29 U.S.C. § 1102(16). Even assuming that Roberts raised a triable issue as to whether the STD Program is subject to ERISA, AIG's STD Program does not refer to Lombardo as an "administrator" (D. 56.1 Stmt. ¶ 62), and Roberts offers no facts that would generate triable issues as to any other avenue under which Lombardo might be considered an "administrator" under the terms of the statute.

by 29 U.S.C. § 1002(1) or as discussed by Department of Labor regulations implementing 29 U.S.C. § 1002(1), see 29 C.F.R. § 2510.3-1(b)(2) (explaining the distinction between employee welfare benefit plans and non-covered payroll practices). Nor does Roberts raise triable issues on factors relevant to whether the STD Program may be subject to ERISA, such as whether the benefits are not, as AIG claims, payable out of AIG's general operating assets or administered without additional conditions or contingencies. See Shea v. Wells Fargo Armored Serv. Corp., 810 F.2d 372, 376 (2d Cir. 1987) (discussing the factors relevant to determining whether an employer's practice is covered by ERISA).

Rather, Roberts's sole assertion is that the STD Program is subject to ERISA because it does not pay 100 percent of salary for employees. (Pl. Mem. 21.) That assertion, which in any event is contradicted by relevant law, see Bassiri v. Xerox Corp., 463 F.3d 927, 931 (9th Cir. 2006) (relying on Department of Labor opinion letters to find that an employer's plan, which paid employees out of its general assets 60 percent of their regular compensation while absent on long-term disability, qualified as an exempt payroll practice), does not raise a triable issue as to Lombardo's liability as an "administrator" of the STD Program. Accordingly, Lombardo is entitled to summary judgment.

V.   Conversion Claim

Last, Roberts brings a pendent state claim for conversion, alleging that AIG did not return to him some of his personal property, including several textbooks, papers, and a computer hard drive (Roberts Dep. 481-85), after he was fired. This claim lacks merit because "a conversion does not occur until the defendant refuses to return the property after demand." Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 53-54 (2d Cir. 1993), quoting Meese v.

17

Miller, 436 N.Y.S.2d 496, 500 (App. Div.1981). There is no evidence in the record that AIG ever refused to return Roberts's property. To the contrary, Roberts consistently testified in his deposition that he was allowed to retrieve "personal things from my desk" (Roberts Dep. 497), and that "[AIG] agreed I could go back to my desk with the security guard to get my house keys and things like that." (Id., see also id. at 513, 515.) Roberts's assertion that he only had the opportunity to retrieve the "small items" from his office and that AIG "kept" other items (Pl. Mem. 21), is not supported by his testimony. Accordingly, AIG's motion for summary judgment on this claim is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted with respect to the ERISA and conversion claims and denied with respect to the FMLA and CHRL claims. Plaintiff's motion for partial summary judgment is denied.

SO ORDERED.

Dated: New York, New York
September 29, 2008

_____
GERARD E. LYNCH
United States District Judge