# JURY CHARGES (INSTRUCTIONS)

STEVEN ROBERTS, Plaintiff,

-against-

AIG GLOBAL INVESTMENT CORPORATION and AMERICAN INTERNATIONAL

GROUP INC., Defendants.

## Jury Charges (Instructions)

## Introductory Remarks

Members of the jury, you are about to enter your final duty, which is to decide the fact issues in this civil case.  Before you do that, I will instruct you on the law.

## Role of the Court

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.  You will receive a copy of these instructions to take with you into the jury room.

You should not, any of you, be concerned about the wisdom of any legal rule that I state.  Regardless of any opinion that you may have as to what the law may be -- or ought to be -- it would violate your sworn duty to base a verdict upon any other view of the law than the one I give you.

-2-

## Role of the Jury

Your role, as I have earlier said, is to consider and decide the fact issues in this case. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the evidence; you determine the credibility or believability of the witnesses; you resolve whatever conflicts may exist in the testimony; you draw whatever reasonable inferences and conclusions you decide to draw from the facts as you have determined them; and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is anything I may have said during the trial or may say during these instructions about a fact issue to be taken instead of your own independent recollection. What I say is not evidence. It is your own independent recollection of the evidence that controls. In this connection, remember that a question put to a witness is never evidence. Only the answer is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record.

If there is any difference or contradiction between what any lawyer has said and what you decide the evidence showed, or between anything I may have said and what you decide the evidence showed, it is your view of the evidence -- not the lawyers', and not mine -- that controls.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial

NY1 26603131.1

are not any indication of my views of what your decision should be as to whether the Plaintiff or the Defendants[1] have presented the more convincing evidence.

I also ask you to draw no inference from the fact that upon occasion I may have asked questions of certain witnesses. These questions were intended only for clarification or to move things along, and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other of the witnesses. **It is critically important that you understand that I wish to convey absolutely no opinion as to the verdict you should render in this case, and that even if I did convey such an opinion, you would not be obliged in any way to follow it.**

In determining the facts, you must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party, and without regard to what the reaction of the parties or the public to your verdict may be. I will later discuss with you how to pass upon the credibility of witnesses.

## Burden of Proof

As this is a civil case, Plaintiff has the burden of proving his claims and damages by a preponderance of the evidence. This means that Plaintiff has the burden of proving by a preponderance of the evidence each and every disputed element of his claim and damages. If you find that Plaintiff has failed to establish his claim by a preponderance of the evidence, you must decide against him on the issues you are considering. Similarly, Defendants have the burden of proving their defenses by a preponderance of the evidence. If you find that the

---

[1]       Defendants assert that AIGGIC is the only proper employer-defendant. Defendants concede to the use of the word "Defendants" throughout the proposed instructions without waiving their argument that AIGGIC is the only properly-named defendant.

-4-

Defendants have failed to establish their defenses by a preponderance of the evidence, you must decide against them on the issues you are considering.

To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It does not mean the greater number of witnesses or the greater length of time taken by either side.  The phrase refers to the quality of the evidence; that is, its persuasiveness, the weight and the effect that it has on your minds.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

This concept of a preponderance of the evidence is often illustrated with the idea of scales.  You put on one side all of the credible evidence favoring Plaintiff and on the other all the credible evidence favoring the Defendants.  If the scales tip toward the Plaintiff because Plaintiff's evidence is weightier, you must find in Plaintiff's favor.  But if the scales are evenly balanced, or if they tip in Defendants' favor, then you must find for the Defendants.  Remember, Plaintiff has the burden of proof on his claim, and Defendants have the burden of proof on their defenses.  **[Defendants object to the inclusion of "Defendants have the burden of proof on their defenses" as this is an incorrect statement of law.  Rather, Defendants only have the burden of proof with respect to "affirmative" defenses as recognized by applicable law.]**

Some of you may have heard of "proof beyond a reasonable doubt," which is the standard of proof that is used in a criminal trial.  A plaintiff in a civil case does not have to satisfy that requirement, and you should put it out of your mind.

-5-

## Evidence/What is Not Evidence

The evidence from which you are to decide what the facts are consists of:

1.    the sworn testimony of witnesses, on both direct and cross-examination, including by deposition, regardless of who called the witness;

2.    the documents and exhibits which have been received into evidence;

3.    any facts to which all the lawyers have agreed or "stipulated"; and

4.    any fact which I have instructed you to accept as true.

Nothing else is evidence -- not what the lawyers say, not what I say, and not anything you heard outside the courtroom.

Some of the testimony before you is in the form of deposition testimony which has been received in evidence.  A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions.  You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

## Direct and Circumstantial Evidence

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally experienced through his or her own senses -- in other words, something seen, felt, touched, heard, or tasted. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  Here is a simple example of circumstantial evidence:

-6-

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella that was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it has been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

It is for you to decide whether a fact has been proven by circumstantial evidence.  In making that decision, you must consider all the evidence related to that fact in the light of reason, common sense, and your experience.

## **Inference**

During the trial you may have heard the attorneys use the term "inference," and in their arguments they may have asked you to infer, on the basis of your reason, experience, and common sense, from one or more proven facts, the existence of some other facts.

-7-

An inference is not a suspicion or a guess.  It is a logical conclusion that a disputed fact exists that we reach in light of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion which you, the jury, are permitted to draw -- but not required to draw -- from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences you should exercise your common sense.

Keep in mind that the mere existence of an inference against the Defendants does not relieve the Plaintiff of the burden of establishing his case by a preponderance of the evidence.  In order for the Plaintiff to obtain a verdict in his favor, you must still believe from the credible evidence that the Plaintiff has sustained the burden cast upon him on one or both of his causes of action.  If the Plaintiff has failed to sustain his burden on one of his causes of action, then your verdict must be for the Defendants on that cause of action.  If you should find that all of the evidence is evenly balanced, then the Plaintiff has not sustained his burden of proof and your verdict should be for the Defendants.

If, and only if, you determine, after carefully weighing all the evidence, that the facts favor the Plaintiff by the standard I have articulated, then he has met his burden of proof.

NY1 26603131.1

## Credibility of Witnesses

You have had the opportunity to observe the (live) witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of each witness' testimony.

How do you determine where the truth lies?  You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility that a witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.

You should consider the opportunity each witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency, or lack of consistency and its corroboration, or lack of corroboration, with other believable testimony.  You watched the witnesses testify (and heard their deposition testimony read).  Everything a witness said or did on the witness stand counts in your determination.  How did the witness appear?  What was the witness' demeanor while testifying?  Often it is not what people say, but how they say it, that moves us.

In deciding whether to believe a witness, keep in mind that people sometimes forget things.  You need to consider, therefore, whether in such a situation the witness' testimony reflects an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

-9-

If you find that any witness has willfully testified falsely as to any material fact (that is, as to an important matter) the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  You are not required, however, to consider such a witness as totally unworthy of belief.  You may accept so much of the witness' testimony as you deem true and disregard what you feel is false.  As the sole judges of the facts, you must decide which of the witnesses you will believe, what portion of the testimony you accept, and what weight you will give to it.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

### Interest in Outcome

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case.  Such an interest in the outcome of the case creates a motive to testify falsely and may sway a witness to testify in a way that advances the witness' own interest.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  An interested witness is not necessarily less credible than a disinterested witness.  The fact that a witness is interested in the outcome of the case does not

-10-

mean that he or she has not told the truth.  It is for you to decide, based upon your own

perceptions and common sense, to what extent, if at all, the witness' interest has affected his or

her testimony.

**DEFENDANTS' GENERAL OBJECTION:  Defendants object, overall, to Plaintiff's**

**proposed instructions with respect to his claims and damages to the extent that they fail to**

**include all of the elements and law relating thereto.  Accordingly, Defendants' object**

**generally to Plaintiff's proposed instructions, cite their specific objections within**

**"Plaintiff's Proposed Instructions" and provide their own proposed instructions with the**

**appropriate citation to caselaw.**

## Plaintiff's Family and Medical Leave Act Claim

### *PLAINTIFF'S PROPOSED INSTRUCTION*

In this case, the plaintiff, Steven Roberts, claims that the defendants violated a federal

law known as the Family and Medical Leave Act, or "FMLA," as it is commonly called.

Specifically, Mr. Roberts claimed that he was entitled to time off work under the FMLA, and

that Defendants interfered with, restrained or denied him his right to time off.

The FMLA entitles eligible employees to take up to twelve weeks of leave during any

twelve-month period for a "serious health condition."  The FMLA also makes it unlawful for an

employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right

provided by the FMLA.

I instruct you that Mr. Roberts had a serious health condition within the meaning of the

FMLA, and that Mr. Roberts gave proper notice of his intention to take a leave of absence from

his job.  **[Defendants object to the previous sentence.  Plaintiff must prove that he gave**

-11-

proper notice of his intention to take a leave of absence from his job.  **Plaintiff contends that it was already decided on summary judgment that there is no dispute that Plaintiff provided sufficient notice of his intent to take leave.  *Sept. 29, 2008 Decision, p. 7-8, n. 12.* Under the "law of the case" doctrine, Defendants are prohibited from arguing otherwise to the jury.  *Pescatore v. Pan Am*, 97 F.3d 1, 8 (2nd. Cir. 1996)  "The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (Citation omitted). ]**  Thus, in order to prevail on his claim under the FMLA, Mr. Roberts must prove that he was denied benefits to which he was entitled under the FMLA.

If you find that AIG fired Mr. Roberts for absenteeism or poor performance, when that absenteeism or poor performance was caused by the serious health condition that led to Mr. Roberts' request for FMLA leave, you must find that Defendants denied Mr. Roberts FMLA benefits to which he was entitled.  **[Defendants object to the previous sentence.  Caselaw provides that Plaintiff is not automatically entitled to a finding that Defendants denied him FMLA benefits to which he may be entitled by merely proving that his poor performance and/or absenteeism were caused by the alleged serious health condition that gave rise to his FMLA leave request.  *See Grubb v. Southwest Airlines*, 2008 U.S. App. LEXIS 21412, at \*21 (5th Cir. Oct. 10, 2008); *McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1107 (10th Cir. 2002) ("the FMLA does not protect an employee from performance problems caused by the condition for which FMLA leave is taken, nor does it require that an employee be given an opportunity to show improved job performance when not ill"); *see also Vandenbroek v. PSEG Power CT LLC*, 2009 U.S. App. LEXIS 26965, at\*6 (2d Cir. Dec. 11, 2009) (Summary**

-12-

Order) (finding that even though alcoholism can be considered a disability under the Americans with Disabilities Act, the impairment could not protect plaintiff from termination because it affected his ability to show up for work and "regularly attending work is an essential function of virtually every job" (citations omitted)).

Plaintiff contends that this instruction is entirely appropriate and conforms to the Court's order on the summary judgment motions, which held that "[w]ith respect to an interference claim, so long as a reasonable trier of fact determines that Roberts was terminated because of poor performance that was, in fact, caused by his medical condition, Roberts may prevail on his claim that he was denied an entitlement under the FMLA." *Sept. 29, 2008 Decision, p. 11, n. 18*). *See also Miller v. Defiance Metal Products,* 989 F.Supp. 945, 945 (N.D.Ohio1997); *Caruthers v. Evanston Northwestern Healthcare Corp.,* 458 F.Supp. 2d 696, 702 (N.D.Ill. 2006); *Dodaro v. Village of Glendale Heights,* 2003 Wl 1720030, *8, 2003 U.S. Dist. LEXIS 5056, *28, 01 C 6396 (N.D.Ill. March 31, 2003); *Shtab v. Greate Bay Hotel and Casino*, 173 F.Supp. 2d 255, 267 (D.N.J. 2001); *Arban v. West Pub. Corp.*, 345 F.3d 390, 402 (6th Cir. 2003)]

Alternatively, if you find that AIG discouraged Mr. Roberts from taking leave by encouraging or requiring him to start his leave at a later date than requested, you must find that Defendants denied Mr. Roberts FMLA benefits to which he was entitled.

In this case, it does not matter whether AIG intended to violate the FMLA. If either Defendant denied Mr. Roberts a right to which he was entitled under the FMLA, you mst find for the Plaintiff on this claim.

-13-

## *DEFENDANTS' PROPOSED INSTRUCTION*

In this case, the plaintiff, Steven Roberts, claims that the defendants violated a federal law known as the Family and Medical Leave Act, or "FMLA," as it is commonly called. Specifically, Mr. Roberts claimed that he was entitled to time off work under the FMLA, and that Defendants interfered with, restrained or denied him his right to time off.  A violation of this provision of the FMLA creates what is commonly known as an "interference" claim.  On the other hand, Defendants deny his claim and maintains that it terminated his employment because of his unsatisfactory job performance, and not because he had requested a leave under the FMLA.

In order for Mr. Roberts to prevail on his claim under the FMLA, you must find each of the following: (1) he was eligible for a leave of absence under the FMLA; (2) he gave Defendants sufficient notice of his request for a leave of absence; and (3) Defendants unlawfully interfered with his rights under the FMLA.

The FMLA entitles eligible employees to take up to twelve weeks of leave during any twelve-month period for a "serious health condition."  I instruct you that Mr. Roberts had a serious health condition within the meaning of the FMLA.  Thus, in order to prevail on his claim under the FMLA, Mr. Roberts must prove that he gave Defendants sufficient notice of his request for a leave of absence and Defendants interfered with benefits to which he was entitled under the FMLA. **[Plaintiff objects to this instruction as contrary to the summary judgment decision in this case, which held that there is no dispute that Plaintiff provided sufficient notice of his intent to take leave.  *Sept. 29, 2008 Decision, p. 7-8, n. 12.*]**

-14-

An employee seeking a foreseeable leave of absence for planned medical treatment under the FMLA shall provide his employer with not less than 30 days' notice of his intention to take leave, except if the date of the treatment requires leave to begin in less than 30 days, in which case the employee shall provide such notice as is practicable.  You have to decide whether Mr. Roberts gave Defendants sufficient notice of the request for a leave of absence that he submitted on August 1, 2004.  If you find that Mr. Roberts failed to give Defendants sufficient notice, then you must return a verdict for Defendants and you must stop your deliberation.  If, however, you find that Mr. Roberts did provide Defendants with sufficient notice, then you must decide whether Defendants unlawfully interfered with his rights under the FMLA.  **[Plaintiff objects to this instruction as it is contrary to the summary judgment decision in this case which held that there was no dispute Plaintiff gave sufficient notice of his intention to take leave.  *Id.* This instruction is also unnecessary and confusing to the jury since there is no allegation that Plaintiff's requested leave was for purposes of planned medical treatment.]**

The FMLA does not protect an employee from being discharged from a job for legitimate business reasons, such as unsatisfactory job performance.  Indeed, an employee can be fired for unsatisfactory performance even if that performance is due to the same root cause as the need for the leave of absence.  That is because an employee who requests a leave of absence under the FMLA is not entitled to any greater rights than he would have if he had not requested the leave of absence in the first place.  As a result, an employer can discharge a employee, and therefore prevent him from taking his FMLA leave, if the employer can show that it would have made the same decision regardless of the employee's request for FMLA leave.  An employer is only liable

-15-

under the FMLA if it terminates an employee's employment because f his request for a leave of absence.

**[Plaintiff objects to this instruction as it is in direct contradiction to the Court's decision on summary judgment, which held that "[w]ith respect to an interference claim, so long as a reasonable trier of fact determines that Roberts was terminated because of poor performance that was, in fact, caused by his medical condition, Roberts may prevail on his claim that he was denied an entitlement under the FMLA."** *Sept. 29, 2008 Decision, p. 11, n. 18***).**

**Plaintiff also objects to this instruction as it incorrectly states that Defendants are liable only if they terminated the plaintiff *because* of his request for leave.  Defendants repeat the error they made in their summary judgment motion of confusing an FMLA retaliation claim, which requires a showing of intent, with Mr. Roberts' interference claim, which does not.** *Sept. 29, 2008 Decision, p. 10, n. 16, p. 11, n. 18; see also Potenza v. City of New York,* **365 F.3d 165 (2d Cir. 2004).]**

In reaching your verdict on Mr. Roberts' FMLA interference claim, you must decide whether Defendants legitimately prevented him from taking a medical leave of absence.  In other words, you must decide if Defendants terminated Mr. Roberts' employment because of his unsatisfactory job performance *or* because he had requested a leave of absence under the FMLA. Defendants did not violate the FMLA if you conclude that it decided to terminate Mr. Roberts' employment because of his unsatisfactory job performance. **[Plaintiff asserts the same objection as the previous paragraph.]**

-16-

In considering whether Defendants terminated Mr. Roberts' employment for unsatisfactory job performance, you must accept that Defendants were entitled to make any business judgment or decision to chose – however unfair, unwise, unreasonable or wrong that judgment or decision may appear to you – so long as the decision-maker was not exercising his judgment because Mr. Roberts had requested a leave of absence under the FMLA.  You are not to decide whether, had you been Mr. Roberts' manager or employer, you would have concluded that his job performance was unsatisfactory or you would have made the same decision to terminate his employment.  You are not to second-guess Defendants' assessment of Mr. Roberts' job performance or the wisdom of the decision to terminate his employment.  Defendants were entitled to make the decision to discharge Mr. Roberts for any reason, or even no reason at all, so long as it did not decide to discharge him because he had requested a FMLA leave of absence.

**[Plaintiff asserts the same objection as the previous two paragraphs.]**

In this case, it does not matter whether Defendants intended to violate the FMLA.  If Defendants interfered with a right to which Mr. Roberts' was entitled under the FMLA, you must find for the Plaintiff on this claim.  If you find that Defendants has shown that it terminated Mr. Roberts' employment because of his unsatisfactory job performance, then you must return a verdict for Defendants.  If, however, you find that Defendants terminated Mr. Roberts' employment because he had requested a leave of absence, then you must return a verdict for Mr. Roberts.

**[Plaintiff asserts the same objection as the previous three paragraphs.]**

DEFENDANTS' AUTHORITY:  *Sarnowski v. Air Brook Limousine*, 510 F.3d 398, 401 (3d Cir. 2007); *Thorneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 979-81 & n.7 (8th Cir. 2004);

-17-

29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216(a); *Grubb v. Southwest Airlines*, 2008 U.S. App.

LEXIS 21412, at *21 (5th Cir. Oct. 10, 2008); *McBride v. Citgo Petroleum Corp.*, 281 F.3d

1099, 1107 (10th Cir. 2002); *see also Vandenbroek v. PSEG Power CT LLC*, 2009 U.S. App.

LEXIS 26965, at*6 (2d Cir. Dec. 11, 2009) (Summary Order); *Powell v. Syracuse Univ.*, 580

F.2d 1150, 1156-57 (2d Cir.), *cert. denied*, 439 U.S. 984 (1978); *Luxenberg v. The Guardian Life

Ins. Co.*, 2004 U.S. Dist. LEXIS 3121, at *23 (S.D.N.Y. Mar. 2, 2004).

<u>**Plaintiff's Claim Under the New York City Human Rights Law**</u>

***<u>PLAINTIFF'S PROPOSED INSTRUCTION</u>***

Mr. Roberts' claim of disability discrimination arises under the laws of New York City.

The New York City Administrative Code states that employers, such as the Defendants, must

make reasonable accommodation to enable a person with a disability to satisfy the essential

requisites of a job, provided that the disability is known or should have been known by the

employer.  The employer, for its part, has the burden of showing that an employee could not

perform the essential requisites of the job with a reasonable accommodation.

A "disability" under the Human Rights Law is defined as a physical, medical, mental,

psychological impairment or a history or record of such impairment.

Under the Human Rights Law, employers are strictly liable for violations of the law that

are committed by an employee with managerial or supervisory authority.

In order for Plaintiff to recover on his claim against Defendants, Plaintiff must prove that

he had a disability as defined by the Human Rights Law, that he requested a reasonable

accommodation of his job duties, that he was able to perform the essential functions of his job

with an accommodation, and that Defendants denied him such an accommodation  under New

-18-

York City law.  **[Defendants object to Plaintiff's proposed instruction because it is an incomplete and/or inaccurate statement of the law.**

**Plaintiff contends that the proposed instruction is appropriate.  *See* N.Y.C. Administrative Code 8-107 (1)(a); (15)(a); (15)(b) ("[i]n any case where the need for reasonable accommodation is placed in issue, it shall be an affirmative defense that the person aggrieved by the alleged discriminatory practice could not, with reasonable accommodation, satisfy the essential requisites of the job"); N.Y.C. Administrative Code 8-102(18): "[t]he term "reasonable accommodation" means such accommodation that can be made that shall not cause undue hardship in the conduct of the covered entity's business. The covered entity shall have the burden of proving undue hardship;"  N.Y.C. Administrative Code 8-102 (16) (definition of disability); N.Y.C. Administrative Code 8-107 (13)(b)(1) (strict liability for supervisor's actions); N.Y.C. Administrative Code 8-107(15)(b) (establishing inability to perform job with reasonable accommodation as affirmative defense of employer);  *Philips v. City of New York,* 66 A.D.3d 170, 183, 884 N.Y.S.2d 369, 378 (1ˢᵗ Dept. 2009) ("The plain language of the text could not be clearer: it is defendants who had the obligation to prove that plaintiff could not, with reasonable accommodation, "satisfy the essential requisites" of the job"). ]**

*DEFENDANTS' PROPOSED INSTRUCTION*

Mr. Roberts' alleges that Defendants failed to accommodate his alleged disability, in violation of New York City Human Rights Law.  Specifically, he claims that Defendants should have granted him a modified work schedule.  On the other hand, Defendants deny Mr. Roberts' claim and maintains that Mr. Roberts never informed Defendants of his alleged disability or

-19-

requested a reasonable accommodation to his work schedule.  The New York City Human Rights Law states that employers, such as the Defendants, must make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job, provided that the disability is known or should have been known by the employer.

To establish Defendants' duty to provide a reasonable accommodation, Mr. Roberts must prove, by a preponderance of the evidence, each of the following elements:

1.     he had a disability;

2.     Defendants had notice of that disability;

3.     with reasonable accommodation, he could have performed the essential functions of is job; *and*

4.     Defendants refused to make a reasonable accommodation for him.

**[Plaintiff objects to this instruction as it implies that Plaintiff has the burden of proof of showing that he could perform the job functions with a reasonable accommodation.  *See* above response to Defendants' objection to Plaintiff's proposed instruction].**

A "disability" under the Human Rights Law is defined as a physical, medical, mental, psychological impairment or a history or record of such impairment.

Mr. Roberts had the obligation to inform Defendants of his alleged disability before Defendants could be required to make an accommodation.  An employer is not expected to accommodate a disability of which it is unaware.  Therefore, if you find that Mr. Roberts failed to inform Defendants of his alleged disability, you must return a verdict in favor of Defendants.

-20-

**[Plaintiff objects to this instruction as it is contrary to the Court's summary judgment decision, which holds "Roberts must first establish that he provided notice, or that AIG should have known, of his disability."** *Sept. 29, 2008 Decision, p. 15;* **N.Y.C. Human Rights Law 8-107(15)(a);** *See also Pimental v. Citibank,* **29 A.D.2d 141, 149, 811 N.Y.S.2d 381, 387 (1st Dept. 2006) ("disability discrimination statutes, whether federal or state, envisage employer and employee engaged in an interactive process in arriving at a reasonable accommodation for a disabled employee... [t]he employer has the responsibility to investigate an employee's request for accommodation and determine its feasibility").]**

In order for Plaintiff to recover on his claim against Defendants, Plaintiff must prove that he had a disability as defined by the Human Rights Law, that he requested a reasonable accommodation of his job duties, that he was able to perform the essential functions of his job with an accommodation, and that Defendants denied him such an accommodation under New York City Human Rights Law.

**[Plaintiff objects to this instruction for the reasons set forth in the prior objections to this section.]**

If you find that Mr. Roberts made a request for an accommodation for a disability about which Defendants was aware, you still must determine whether the accommodation requested by Mr. Roberts was reasonable.  The term "reasonable accommodation" means modifications or adjustments to the manner or circumstances under which the position held by Mr. Roberts is customarily performed that would enable him to perform the essential functions of his position. Mr. Roberts bears the burden of proving that an accommodation existed that would have enabled him to perform the essential functions of his job.

-21-

**[Plaintiff objects to this instruction as completely contrary to the N.Y.C. Human Rights Law's allocation of the burden of proof on this issue.  N.Y.C. Administrative Code 8-107(15)(b) *Philips v. City of New York, supra.*]**

Mr. Roberts contends that Defendants should have reasonably accommodated him by modifying his work schedule.  You first must decide whether Mr. Roberts would have been able to perform the essential functions of his job with a modified work schedule.  The "essential functions of an employment position" are the basic, fundamental duties of a job that a person must be able to perform in order to hold a particular position.  For example, the law recognizes that attendance is an essential function of most jobs.  Second, you must determine whether it would have been reasonable to require Defendants, under all of the circumstances, to modify Mr. Roberts' work schedule as he allegedly requested.  In that regard, an employer's duty to reasonable accommodate a disabled employee does not require the employer to excessively burden other employees with work.  Nor does the law require an employer to excuse an employee from performing essential job functions.

**[Plaintiff objects to this instruction as it ignores the broader definition of this term "reasonable accommodation" under the Human Rights Law, as opposed to the Americans with Disabilities Act.  *Philips,* 66 A.D.3d at 183 ("there are important differences from the State HRL (as well as the ADA). First, there is no accommodation (whether it be indefinite leave time or any other need created by a disability) that is categorically excluded from the universe of reasonable accommodation. And unlike the ADA, there are no accommodations that may be "unreasonable" if they do not cause undue hardship.")   It also, as set forth above, misallocates the burden of proof on this issue.]**

-22-

The fact that AIG or AIGGIC may have offered leniency or certain accommodations to Mr. Roberts prior to January 1, 2004, as a temporary experiment or as an act of compassion toward Mr. Roberts, does not mean that the same leniency or accommodations must be forever extended by Defendants to Mr. Roberts, or that those accommodations are necessarily reasonable under the law.  Otherwise, an employer would be reluctant to offer benefits or concessions to disabled employees for fear that, by once providing the benefit or concessions, an employer would forever be required to provide that accommodation.

**[Plaintiff objects to this instruction as misstating the Defendants' obligations under the law, which is to decide requests for reasonable accommodation on an individual basis.]**

Finally, even if Mr. Roberts proves that a reasonable accommodation in the form of a modified work schedule existed and was denied, you must find for Defendants if that modified schedule would have caused undue hardship on Defendants' business operations.  An employer is not required to make an accommodation if that accommodation would impose an undue hardship on its business operation.  In determining whether there is an undue hardship, you should consider the following factors:

1.      nature and net cost of the accommodation;

2.      overall financial resources of the facility or facilities involved;

3.      the number of persons employed at the facility;

4.      the overall financial resources of Defendants, including the overall size of the business;

5.      the type of operation or operations of Defendants; and

6.      the impact of the proposed accommodation on other employees.

-23-

NY1 26603131.1

**[Plaintiff objects to this instruction because Defendants, by not pleading undue hardship as an affirmative defense in their answer, have waived this defense.  *Nat'l Market Share Inc. v. Sterling Nat'l Bank,* 393 F.3d 520, 526 (2d Cir. 2004) ("Generally, a failure to plead an affirmative defense results in a waiver.") (citation and internal quotations omitted).  This instruction also omits that Defendants have the burden of proof on this defense.  N.Y.C. Administrative Code 8-102(18).]**

DEFENDANTS' AUTHORITY:  *Mullen v. City of New York*, 2003 WL 21511952, at *9 (S.D.N.Y. July 1, 2003); *Stola v. Joint Ind. Bd.*, 889 F. Supp. 133, 135 (S.D.N.Y. 1995); *Ynoa v. New York Presbyterian*, 2005 WL 1653837, at *5 (S.D.N.Y. July 14, 2005), *aff'd* 2007 WL 295482 (2d Cir. Jan. 26, 2007); *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000); *Aquinas v. Fed'l Express Corp.*, 940 F. Supp. 73, 78-79 (S.D.N.Y. 1996); N.Y.C. Admin. Code § 8-107(15)(a); 29 C.F.R. § 1630.2(n); 29 C.F.R. § 1630.2(o); Kevin O'Malley, Jay Grenig & William Lee, Federal Jury Practice and Instructions § 172.21 (5th ed. 2001).

-24-

## Damages - Effect of Instruction as to Damages

The fact that you are being instructed as to the proper measure of damages should not be considered by you as suggesting any view as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance in the event you should find in favor of Plaintiff. You may or may not award damages to Plaintiff. That is for you to decide.

## Economic Damages

### *PLAINTIFF'S PROPOSED INSTRUCTION*

If you find in favor of Plaintiff on either of his claims, you must then decide if an award of "back pay" is appropriate. If you find in favor of Plaintiff on his Family and Medical Leave act claim, you must also decide if an award representing the value of his short term or long term disability benefits is appropriate.

If you find for Mr. Roberts on his FMLA claim, then AIG is liable to Mr. Roberts for damages equal to the amount of any wages, salary, employment benefits, or other compensation Mr. Roberts lost because of the violation, as well as interest on that amount. **[Defendants object to Plaintiff's instruction as to back-pay because it is inappropriate given his admission that he was unable to work after the expiration of the 12-week FMLA period and given that Defendants did not pay for FMLA leave.**

**Plaintiff contends that the proposed instruction is appropriate. 29 U.S.C. § 2617(a);** *Sept. 29, 2008 Decision, p.* **9,** *n.* **15. In addition, the availability of the value of Plaintiff's long term disability policy as an element of damages is subject to the pending motion** *in limine.* **]**

-25-

The term "employment benefits" means all benefits provided or made available to employees by an employer, including group life insurance, health insurance, short and long term disability insurance, sick leave, annual leave, educational benefits and pensions, regardless of whether such benefits are provided by a practice or written policy of an employer or through an "employee benefit plan."   **[Defendants object to Plaintiff's instruction because their only obligation as to lost employment benefits would be to put Plaintiff in the same position he would have been had he maintained his employment –** *i.e.***, provide him with the sum Defendants expended in maintaining any employment benefits, but they do not become his insurer.  Defendants further refer to their pending motion** *in limine***.]**

If you find for Mr. Roberts on his FMLA claim, he is entitled to "liquidated damages" equal to the amount of damages awarded for lost compensation plus interest unless AIG proves, by a preponderance of the evidence, that their violation of the FMLA was in good faith and AIG had reasonable grounds for believing it was not violating the FMLA.  **[Defendants' propose that the instruction for liquidated damages should be separate from the instruction for lost wages, and Plaintiff's proposal is an incorrect statement of the law with respect to burdens of proof.**

**Plaintiff contends that the instruction that AIG has the burden of proof of showing good faith is proper.  29 U.S.C. § 2617(a)(1)(A)(iii).]**

**_DEFENDANTS' PROPOSED INSTRUCTION_**

 Mr. Roberts cannot recover any lost income for longer than 2 weeks because the parties agree that he was unable to work after the expiration of the 12-week FMLA period.

-26-

If you find for Mr. Roberts on his FMLA claim, then Defendants are liable to Mr. Roberts for damages equal to the amount of any wages, salary, employment benefits, or other compensation Mr. Roberts lost because of the violation, as well as interest on that amount. However, Defendants did not pay any employee's salary during FMLA leave. That is lawful under the FMLA. Instead, during an approved FMLA leave, Defendants' employees could apply for short-term disability under AIG's short-term disability policy. Therefore, you have to decide whether Mr. Roberts has proved to you, by a preponderance of the evidence, that he was entitled to receive short-term disability benefits under the terms of AIG's short-term disability policy during the 12-week period.

DEFENDANTS' AUTHORITY: *Roberts v. AIG Global Investment Corp.*, 2008 WL 4444004, at *4 n.15 (S.D.N.Y. Sept. 30, 2008); *Brown v. Pension Bds., United Church of Christ*, 488 F. Supp. 2d 395, 408 (S.D.N.Y. 2007); *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006); *Pasley v. City of Dallas*, 2004 WL 1205184, at *9 (N.D. Tex. 2004); *Williams v. Toyota Mfg., Kentucky Inc.*, 224 F.3d 844-45 (6th Cir. 2000), *separate judgment for plaintiff on ADA claim reversed on other grounds*, 534 U.S. 184 (2002); O'MALLEY, GRENIG AND LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS, § 173.72 (5th ed. 2001).

## Liquidated Damages

If you find for Mr. Roberts on his FMLA claim, he may be entitled to "liquidated damages" equal to the amount of damages awarded for lost compensation. That is, if you find that Defendants interfered with Mr. Roberts' FMLA rights, then you must decide whether Defendants' conduct was "willful." If you find that Defendants' violation of the FMLA was willful, the Court will award Mr. Roberts money damages in addition to the damages you may

-27-

award him on his FMLA claim.  A violation is willful only if Mr. Roberts has proved to you that

Defendants knew its decision to terminate his employment was a violation of the FMLA, or that

it acted in reckless disregard of that fact.  If Defendants prove that they acted in good faith, that

they did not know, or knew only that the FMLA was potentially applicable, and did not act in

reckless disregard as to whether their conduct was prohibited by the FMLA, even if they acted

negligently, then their conduct was not willful.

**[Plaintiff objects to this instruction, especially "[a] violation is willful only if Mr.**

**Roberts has proved to you that AIGGIC knew its decision to terminate his employment**

**was a violation of the FMLA" as it turns the requirement that Defendants prove their**

**good-faith affirmative defense on its head.  29 U.S.C. § 2617(a)(1)(A)(iii).]**

## Compensatory Damages

### *PLAINTIFF'S PROPOSED INSTRUCTION*

If you find (one or more of the) Defendants violated the Human Rights Law by denying

Plaintiff a reasonable accommodation, then you must determine an amount that is fair

compensation for Plaintiff's damages.  You may award compensatory damages only for injuries

that Plaintiff proves were caused by Defendants' allegedly wrongful conduct.

The damages that you award must be fair compensation - no more and no less.

You may award damages for any pain, suffering, or mental anguish that Plaintiff

experienced as a consequence of Defendants' allegedly unlawful sexual orientation

discrimination.  No evidence of the monetary value of such intangible things such as pain and

suffering has been, or need be, introduced into evidence.  There is no exact standard for fixing

-28-

the compensation to be awarded for these elements of damage.  Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of any damages that you decide to award, you should be guided by common sense.  You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, speculation, or guess work.  On the other hand, the law does not require Plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

To recover damages for mental and emotional distress, the Plaintiff must present credible testimony with respect to the claimed mental anguish and corroboration, either by competent medical proof or by the circumstances of the case.  Psychiatric or other medical treatment is not a precondition to recovery.  Mental and emotional distress may be proved by the Plaintiff's own testimony, corroborated by reference to the circumstances of the alleged misconduct.

The Plaintiff can only recover for the mental and emotional distress, if any, that he proves, by a preponderance of the evidence, was caused by the conduct of the Defendants that violated the Human Rights Law.  If you find that the Plaintiff has proved that he suffered mental or emotional distress, and that the distress was caused by the unlawful discrimination, you must fix that amount of damages that will, as much as money can, fairly compensate the Plaintiff for such injuries.  The purpose of such an award is to compensate the Plaintiff for the actual mental or emotional injuries he suffered, if any, as a direct result of the discrimination that you find occurred.  The purpose of such an award of damages for mental or emotional distress is not to

-29-

punish the Defendants, nor is Plaintiff entitled to be compensated for any emotional distress not caused by the alleged failure to provide a reasonable accommodation.

### *DEFENDANTS' PROPOSED INSTRUCTION*

If you find that Defendants violated the New York City Human Rights Law by denying Plaintiff a reasonable accommodation, then you must determine an amount that is fair compensation for Plaintiff's proven emotional distress, if any.  You may award compensatory damages only for injuries that Plaintiff proves were caused by Defendants' allegedly wrongful conduct under the Human Rights Law.

The damages that you award must be fair compensation - no more and no less.

You may award damages for any pain, suffering, or mental anguish that Plaintiff experienced as a result of Defendants' allegedly unlawful disability discrimination.  In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense.  You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  No evidence of the monetary value of such intangible things such as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage.  But, you may not award damages based on sympathy, speculation or guess work.  The law places the burden upon Mr. Roberts to prove such facts as will enable you to arrive at the amount of damages with a degree of accuracy permitted by the circumstances and without speculation.  Any award you make should be fair in light of the evidence presented at trial.

To recover damages for mental and emotional distress, the Plaintiff must present credible testimony with respect to the claimed mental anguish and corroboration, either by competent

-30-

medical proof or by the circumstances of the case.  Psychiatric or other medical treatment is not

a precondition to recovery.  Mental and emotional distress may be proved by the Plaintiff's own

testimony, corroborated by reference to the circumstances of the alleged misconduct.

The Plaintiff can only recover for the mental and emotional distress, if any, that he

proves, by a preponderance of the evidence, was caused by the conduct of the Defendants that

violated the Human Rights Law.  If you find that the Plaintiff has proved that he suffered mental

or emotional distress, and that the distress was caused by the unlawful discrimination, you must

fix that amount of damages that will, as much as money can, fairly compensate the Plaintiff for

such injuries.  The argument of counsel as to the amount of damages is not evidence.  The

purpose of such an award is to compensate the Plaintiff for the actual mental or emotional

injuries he suffered, if any, as a direct result of the discrimination that you find occurred.  The

purpose of such an award of damages for mental or emotional distress is not to punish the

Defendants , nor is Plaintiff entitled to be compensated for any emotional distress not caused by

the alleged failure to provide a reasonable accommodation.  You may not award damages for

pain, suffering, or emotional distress caused by AIGGIC's alleged interference with Mr.

Roberts' FMLA rights, even if you find that AIGGIC did interfere with Mr. Roberts' FMLA

rights.

DEFENDANTS' AUTHORITY:  E.J. DEVITT, C.B. BLACKMAR & M.A. WOLFF, FEDERAL JURY

PRACTICE AND INSTRUCTIONS, Civil Vol. 3 (4th ed. 1987), 104.06PP; 3 O'MALLEY, GRENIG AND

LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS, § 128.60 (5th ed. 2001) (as modified);

DEVITT, BLACKMAR AND WOLF, FEDERAL JURY PRACTICE AND INSTRUCTIONS, §§104.05,

104.06, & 104A.11 (1987 & Supp. 1993).

-31-

**Punitive Damages**

***PLAINTIFFS' PROPOSED INSTRUCTION***

Plaintiff also seeks punitive damages.  Punitive damages are an extraordinary sanction, available only under aggravated circumstances, to penalize a party for engaging in notably reprehensible conduct.  If you find that Defendant(s) intentionally failed to provide a reasonable accommodation in violation of the New York City Administrative Code, the law allows you, but does not require you, to award punitive damages.  The purpose of an award of punitive damages is, first, to punish a wrongdoer for misconduct, and second, to warn others against doing the same.

You may award punitive damages only if you find from a preponderance of the evidence that Defendant(s) engaged in intentional discrimination with malice or with reckless indifference to the rights of Plaintiff.  Malice and reckless indifference refer to the Defendant's(s)' state of mind that it may be acting in violation of the New York City Administrative Code, not its awareness that it is engaging in discrimination.  An act is done maliciously if it is prompted or accompanied by ill will or spite toward Plaintiff.  Plaintiff may also establish malice if he demonstrates by a preponderance of the evidence that Defendant(s) engaged in egregious or outrageous misconduct directed at him.  An act is done with reckless indifference if it is done in reckless disregard of Plaintiff's rights.

If you determine that Defendant's(s') conduct justifies an award of punitive damages, you may award an amount of punitive damages that all jurors agree is proper.  In fixing the amount, you should consider the following questions:  How offensive was the misconduct?  What amount is needed, considering Defendant's(s') financial condition, to prevent future

-32-

repetition?  Does the amount of punitive damages have a reasonable relationship to the actual damages awarded?

You may assess punitive damages against one or more of Defendants, and not others, or against more than one Defendant in different amounts.  If you do award punitive damages, you should fix the amount using calm discretion and sound reason.  You must not be influenced by sympathy for or dislike of any party in the case.

If you decide to assess punitive damages against one or more of the defendants then, after the verdict is read, the parties will present additional evidence for you to consider in determining the appropriate amount of punitive damages.

If you find that the Defendants are liable to Mr. Roberts, and that Mr. Roberts is entitled to damages, you should decide on the amount of damages to which Mr. Roberts is entitled based on the above-described instructions. You should not consider external factors, such as AIG's recent bailout by the federal government or any speculative impact a damage award might have on taxpayers.  **[Objection: Plaintiff's proposed instruction fails to instruct the jury as to the proper burden of proof and as to Defendants' good faith defense and the fact that if the jury finds Defendants made a good faith effort to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace, then Plaintiff is not entitled to punitive damages.  Plaintiff's proposed instructions also fail to instruct the jury that there were no prior incidents or allegations of discriminatory conduct by the decision-makers at AIGGIC.  Further, Plaintiff's last sentence is irrelevant, prejudicial, and inflammatory.]**

***DEFENDANTS' PROPOSED INSTRUCTION***

-33-

Plaintiff also seeks punitive damages on his failure to accommodate claim under the New York City Human Rights Law.  You may not award Mr. Roberts punitive damages based on his claim that Defendants' interfered with his rights under the FMLA.  Punitive damages are an extraordinary sanction, to penalize a party for engaging in notably reprehensible conduct and to serve as an example or warning to others not to engage in such conduct.  If you find that Defendants intentionally failed to provide a reasonable accommodation in violation of the New York City Human Rights Law, the law allows you, but does not require you, to award punitive damages.

You may award punitive damages only if you find from a preponderance of the evidence that Defendants engaged in intentional discrimination with malice or with reckless indifference to the rights of Plaintiff.  Malice and reckless indifference refer to the Defendants' state of mind that it may be acting in violation of the New York City Human Rights Law, not its awareness that it is engaging in discrimination.  An act is done maliciously if it is prompted or accompanied by ill will or spite toward Plaintiff.  Plaintiff may also establish malice if he demonstrates by a preponderance of the evidence that Defendants engaged in egregious or outrageous misconduct directed at him.  An act is done with reckless indifference if it is done in reckless disregard of Plaintiff's rights.  That is, an employer acts with reckless indifference to an employee's rights when it fails to accommodate an employee, and knows that this failure violates the law.

If you determine that Defendants' conduct justifies an award of punitive damages, you may award an amount of punitive damages that all jurors agree is proper.  In fixing the amount, you should consider the following questions:  How offensive was the unlawful conduct?  What amount is needed, considering Defendants' financial condition, to prevent future repetition?

-34-

Does the amount of punitive damages have a reasonable relationship to the actual damages awarded?

You may assess punitive damages against one or more of Defendants, and not others, or against more than one Defendant in different amounts. If you do award punitive damages, you should fix the amount using calm discretion and sound reason. You must not be influenced by sympathy for or dislike of any party in the case.

I instruct you that, if Defendants' made a good faith effort to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace, then Mr. Roberts is not entitled to punitive damages. You should also consider that there were no prior incidents or allegations of discriminatory conduct by the decision-makers at Defendants'.

If you find that the Defendants are liable to Mr. Roberts, and that Mr. Roberts is entitled to damages, you should decide on the amount of damages to which Mr. Roberts is entitled based on the above-described instructions. You should not consider external factors in arriving at a punitive damages award and should use your own common sense and experience. The amount of punitive damages should not be based on whim of unrestrained imagination. Punitive damages must bear a reasonable relationship to the plaintiff's actual injury. You should consider the amount of compensatory damages awarded in determining the amount of punitive damages.

DEFENDANTS' AUTHORITY: KEVIN O'MALLEY, JAY GRENIG & WILLIAM LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS, § 172.74 (5th ed. 2001) (as revised); New York City Administrative Code § 8-107(13)(e).

**Right to See Exhibits and Hear Testimony**

-35-

Now, ladies and gentlemen, you are about to go into the jury room and begin your deliberations. All of the exhibits will be given to you at the start of deliberations. If you want any of the testimony read, you may also request that. Please remember that if you do ask for testimony, the reporter must search through his or her notes and the lawyers must agree on what portions of testimony may be called for, and if they disagree, I must resolve those disagreements. That can be a time-consuming process. So please try to be as specific as you possibly can in requesting portions of the testimony, if you do.

Your requests for testimony - - in fact any communication with the Court - - should be made to me in writing, signed by your foreperson, and given to one of the Marshals. In any event, do not tell me or anyone else how the jury stands on any issues until after a verdict is reached.

### Duty to Deliberate/Verdict

The most important part of this case, members of the jury, is the part that you as jurors are now about to play as you deliberate on the issues of fact. It is for you, and you alone, to decide whether Plaintiff has sustained the burden of proof on his claims as I have explained it to you with respect to each element of his claims. If you find that Plaintiff has succeeded on either of his claims, you should return a verdict in his favor. If you find that Plaintiff failed to sustain his burden on any element of his claim or that Defendants have sustained their burden on their affirmative defenses, you should return a verdict in favor of Defendants.

I know you will try the issues that have been presented to you according to the oath that you have taken as jurors. In that oath you promised that you would well and truly try the issues in this case and render a true verdict.

-36-

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for yourself but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Every juror should be heard.  No one juror should hold the center stage in the jury room, and no one juror should control or monopolize the deliberations.  Your verdict must be **unanimous**, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

## Selection of Foreperson

Your foreperson will preside over the deliberations and speak for you here in open court. The foreperson has no greater voice or authority than any other juror.

The foreperson will send out any notes and, when the jury has reached a verdict, he or she will notify the Marshal that the jury has reached a verdict.

## Return of Verdict

I will give you a **verdict sheet/form** to be filled in by the jury.  The purpose of the questions on the form is to help us - - the Court, and counsel for Plaintiff and Defendants - - to understand what your findings are.  I will hand this form, which contains a set of questions, to the Clerk who will give it to you so that you may record the decision of the jury with respect to each question.

-37-

No inference is to be drawn from the way the questions are worded as to what the answer should be.  The questions are not to be taken as any indication that I have any opinion as to how they should be answered.  **I have no such opinion, and even if I did it would not be binding on you.**

**Before the jury attempts to answer any question you should read the entire set of questions, and make sure that everybody understands each question.**  Before you answer the questions, you should deliberate in the jury room and discuss the evidence that relates to the questions you must answer.  When you have considered the questions thoroughly, and the evidence that relates to those questions, record the answers to the questions on the verdict sheet/form I am giving you.  **Remember, all answers must be unanimous.**

## Closing Comment

Finally, I say this, not because I think it is necessary, but because it is the custom in this courthouse, you should treat each other with courtesy and respect during your deliberations.

After you have reached a verdict, your foreperson will fill in the verdict sheet/form that has been given to you, sign and date it (and have each of you sign it) and advise the Marshal outside your door that you are ready to return to the courtroom.

I will stress that you should be in agreement with the verdict which is announced in Court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

All litigants stand equal in this courtroom.  All litigants stand equal before the bar of justice.  All litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially, to see that justice is done, all in accordance with your oath as jurors.

-38-

I thank you for your time and attentiveness.

-39-